Electronically Filed
Intermediate Court of Appeals
28669
31-AUG-2012
08:47 AM

NO. 28669

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JASON LANAKILA CABRAL; the Estate of JOSEPH PU KAIKALA;
LYNDA EVADNA KAIKALA, individually, as Special
Administratrix of the Estate of Shawn Kaikala, and
as Guardian Ad Litem for minors: SHANTEL KAIUOLA
CABRAL, MARK KALE CABRAL, and IOKEPA JOHN KAIKALA;
JOHN E. KRAUSE, individually and as Guardian Ad Litem
for minors: KAHEKILI JOHN KRAUSE, KEANU KAIKALA KRAUSE,
KAWENA KAIKALA KRAUSE, Plaintiffs-Appellants,
v.
STATE OF HAWAI'I, Defendant/Cross-
Claim Plaintiff/Cross-Claim Defendant/Appellee,
JONI MARIE SCOTT, Defendant/Cross-Claim
Defendant/Cross-Claim Plaintiff,
and
JOHN DOES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CIVIL NO. 01-1-0449)

MEMORANDUM OPINION
(By: Nakamura, C.J., Foley and Leonard, JJ.)

Plaintiffs-Appellants Jason Lanakila Cabral; Joseph Pu
Kaikala (Joseph); Lynda Evadna Kaikala (Lynda), individually, as
Special Administratrix of the Estate of Shawn Kaikala, and as
Guardian Ad Litem for minors: Shantel Kaiuola Cabral, Mark Kale
Cabral, and Iokepa John Kaikala; and John E. Krause (Krause),
individually and as Guardian Ad Litem for minors: Kahekili John
Krause, Keanu Kaikala Krause, and Kawena Kaikala Krause
(collectively, Plaintiffs) appeal from the Judgment entered

April 20, 2007 in the Circuit Court of the Third Circuit[1] (circuit court). Judgment was entered in favor of Defendant-Appellee State of Hawai'i (State) and against Plaintiffs.

On appeal, Plaintiffs contend:

1) The circuit court erred in issuing the following Findings of Fact (FOFs), in whole or in part:

a) The FOFs related to the accident, specifically (1) second sentence of FOF No. 3 and second sentence of FOF No. 15, (2) second, third, and fourth sentences of FOF No. 13, and (3) last sentence of FOF No. 17; and

b) The FOFs related to the 1994 resurfacing project, specifically, the last sentence of FOF 7, and FOFs 8, 10, and 24.

2) Conclusions of Law (COLs) B, C, D, and E are wrong.

3) The circuit court erroneously admitted into evidence the video animation and testimony about the lack of accidents.

4) The circuit court erroneously awarded costs to the State under Hawai'i Rules of Civil Procedure (HRCP) Rule 68.[2]

## I. BACKGROUND

On July 20, 2000, Defendant Joni Marie Scott[3] (Scott) was driving her 1998 Chevy Blazer (the SUV) north on Highway 11 toward Hilo on the island of Hawai'i. At the same time, Shawn Kaikala (Kaikala) was driving a 1986 Honda Accord (the Honda) south on Highway 11 toward Mountain View. Kaikala's friend,

---

[1] The Honorable Glenn S. Hara presided.

[2] HRCP Rule 68 provides, in pertinent part:

> At any time more than 10 days before the trial begins, any party may serve upon any adverse party an offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted . . . the clerk shall, in accordance with the agreement, enter an order of dismissal or a judgment. An offer not accepted shall be deemed withdrawn . . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

[3] Scott settled her claims with Plaintiffs before trial.

Fredrene Caminos (Caminos), was in the front passenger seat. Highway 11 was designed, constructed, and maintained by the State. It had been raining and the roadway was wet. Approximately one-half mile after Mile Marker 12, Scott lost control of the SUV, crossed the median line, and collided with the Honda. Scott, Caminos, and Kaikala were injured; Kaikala died from her injuries.

On October 16, 2001, Plaintiffs[4] filed a civil complaint against Scott and the State, asserting negligence and wrongful death actions[5] against Scott and the State. On April 22, 2005, the State made offers of settlement with all Plaintiffs except Krause. The offers ranged from $500 to $1,500. Because none of the offers were accepted within ten days of service, they were deemed withdrawn. See HRCP Rule 68.

A seven-day bench trial began on July 10, 2006. On November 1, 2006, the circuit court entered its "Findings of Fact and Conclusions of Law," holding that Plaintiffs failed to prove by a preponderance of the evidence that the State was negligent in the "design, construction or maintenance" of Highway 11. The legal cause of the accident and Kaikala's death was attributed solely to the negligence of Scott. On April 20, 2007, the circuit court entered judgment in favor of the State and against Plaintiffs.

On appeal, this court held the appeal was untimely and therefore, this court lacked jurisdiction. Cabral v. State, 126 Hawaiʻi 92, 267 P.3d. 676 (App. 2011). On writ of certiorari,

---

[4] Plaintiffs were Kaikala's boyfriend, Krause; Kaikala's parents, Joseph and Lynda (Joseph died before trial); and Kaikala's seven children.

[5] Plaintiffs purported to assert one cause of action for negligence against the State, another cause of action for negligence against Scott, and a third cause of action for wrongful death. Because the actual decedent, Kaikala, is not a party to this case, the causes of action are more accurately stated as a wrongful death negligence action against the State and a wrongful death negligence action against Scott, pursuant to Hawaii Revised Statutes (HRS) § 663-4 (1993).

the Hawai'i Supreme Court concluded this court had jurisdiction under the "unique circumstances" doctrine and remanded the case for judgment on the merits. Cabral v. State, 127 Hawai'i 175, 277 P.3d 269 (2012).

## II. STANDARD OF REVIEW

### A. Findings of Fact and Conclusions of Law

"In this jurisdiction, a trial court's FOFs are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Chun v. Bd. of Trs. of the Employees' Ret. Sys. of the State of Hawai'i, 106 Hawai'i 416, 430, 106 P.3d 339, 353 (2005) (internal quotation marks, citations, and ellipses omitted) (quoting Allstate Ins. Co. v. Ponce, 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)). "An FOF is also clearly erroneous when the record lacks substantial evidence to support the finding. [The Hawai'i Supreme Court has] defined 'substantial evidence' as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion." Leslie v. Estate of Tavares, 91 Hawai'i 394, 399, 984 P.2d 1220, 1225 (1999) (internal quotation marks and citations omitted) (quoting State v. Kotis, 91 Hawai'i 319, 328, 984 P.2d 78, 87 (1999)).

> A COL is not binding upon an appellate court and is freely reviewable for its correctness. [The appellate court] ordinarily reviews COLs under the right/wrong standard. Thus, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned. However, a COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

Chun, 106 Hawai'i at 430, 106 P.3d at 353 (internal quotation marks, citations, and brackets in original omitted) (quoting Ponce, 105 Hawai'i at 453, 99 P.3d at 104).

4

"Findings of fact . . . . that are not challenged on appeal are binding on the appellate court." Okada Trucking Co., Ltd. v. Board of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

B.    Credibility Of Witnesses

"[T]he credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001).

C.    Foundation for Introduction of Evidence

"When a question arises regarding the necessary foundation for the introduction of evidence, the determination of whether proper foundation has been established lies within the discretion of the trial court, and its determination will not be overturned absent a showing of clear abuse." State v. Assaye, 121 Hawai'i 204, 210, 216 P.3d 1227, 1233 (2009) (internal quotation marks, citation, and brackets omitted).

D.    Evidentiary Rulings

The appellate court applies "two different standards of review in addressing evidentiary issues.  Evidentiary rulings are reviewed for abuse of discretion, unless application of the rule admits of only one correct result, in which case review is under the right/wrong standard." State v. Ortiz, 91 Hawai'i 181, 189, 981 P.2d 1127, 1135 (1999) (internal quotation marks and citations omitted).

E.    Award of Taxable Costs

"The trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." Sierra Club v. Dep't of Transp., 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (internal quotation marks, citations, and brackets omitted).  "An abuse of discretion occurs if the trial

5

court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Chun v. Bd. of Trs. of Employees' Ret. Sys. of State of Hawai'i, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000) (internal quotation marks and citation omitted).

## III.  DISCUSSION

A.  The circuit court did not err when it found that "Scott lost control of her SUV, fish-tailed, crossed the center line, barrel rolled, then struck the Honda driven by Shawn Kaikala."

Plaintiffs contend the following portions of FOF No. 3 and FOF No. 15 are erroneous:

. . . .

3.    . . . About .6 mile post mile marker 12 on Highway 11, Scott lost control of her SUV, fish-tailed, crossed the center line, barrel rolled, then struck the Honda driven by Shawn Kaikala.

. . . .

15.    . . . The SUV then barrel rolled between one and three times before it landed onto the Honda.

There was substantial evidence to support the circuit court's conclusion that the SUV barrel rolled and then hit the Honda, evidence which along with other factors served to negate Plaintiffs' theory that the SUV hydroplaned as a result of the State's negligent design, construction, or maintenance of Highway 11.

Plaintiffs challenge the portions of the FOFs stating that the SUV barrel rolled before striking the Honda.  Plaintiffs argue that the SUV did not barrel roll until after it struck the Honda, which would be consistent with their claim that the SUV hydroplaned due to sheets of water running across the road. Plaintiffs point to the testimony of Hawai'i County Police Officer Gregory Ikeda (Officer Ikeda), who testified: "The [SUV] crossed the double yellow line, entered the path of the [Honda]

6

and was struck on the passenger side of the vehicle, rolled over the top of the [Honda], killing the driver." Officer Ikeda further testified that because the Honda is low to the ground and the SUV has a higher center of gravity, "when the [Honda] hit the tall SUV, it catapulted the SUV over the top."

Plaintiffs also point to statements made to the police by witness Dean Uchino (Uchino), a tour bus driver driving a tour bus directly behind the Honda. The police report by Officer Ikeda states that Uchino said the following:

> I saw the blue [SUV] coming down the road ahead of us. It appeared to fishtail and then began to hydroplane sideways as it was coming down from the Volcano direction. The car spun as it proceeded toward the Honda exposing the passenger's side of the blue [SUV]. It continued sliding, crossing into the Volcano-bound land of traffic; and finally the exposed passenger's side of the [SUV] was struck by the Honda and it was heading toward Volcano. The impact sent the blue [SUV] into the air and rolling over the top of the Honda.

(Emphasis added.)

However, at Uchino's deposition on June 26, 2002, he stated:

> I see an SUV coming down towards us and she started to swerve, sliding on the pavement and then she started to flip over, not end over end, but kind of barrel roll as I would say. And there was another car in front of me and that car stopped. And as that car -- the SUV was coming towards her, they rolled right over this car that was the car in front of me.

(Emphasis added.) When asked if he was "absolutely clear" that "the SUV began to barrel roll before it came into contact with the Honda," Uchino replied, "Yes." He also testified that the SUV might have rolled at least three complete revolutions before it hit the Honda.

When queried by Plaintiffs' attorney, Uchino indicated that "maybe [the SUV] didn't tumble until it hit [the Honda]." Uchino also admitted "I can't really say for sure which was going on, whether [the SUV] was sliding or barrel rolling." He

7

acknowledged that he was "unsure at this point whether [the SUV] barrel rolled before impact or after[.]"

At trial, on direct examination by the State, Uchino testified that "I saw a car, SUV, coming towards us from the Volcano area fishtail couple times and then started to tumble and rolled right over a smaller car." When asked if the SUV rolled over before it struck the Honda, Uchino replied, "I think it did." He then proceeded to testify that he thought the SUV rolled over once or twice before striking the Honda and described the roll as a barrel roll.

On cross-examination, Plaintiffs' counsel showed Uchino the notes he had written at the time of the accident, which stated, "I was traveling south on Highway 11 when we witnessed a north bound SUV hydroplane, turn sideway and collide broadside into a small car traveling south. It appeared the passenger side of the SUV contacted the car on the driver side front of the car and rolled over the car." He acknowledged he made no mention of the SUV rolling over prior to impact.

On April 21, 2003, David Yoshida (Yoshida), an expert in accident investigation and reconstruction, submitted a report to the State opining that the SUV went out of control due to a steering over-correction by Scott, not hydroplaning. Even so, he indicated that the SUV rolled over <u>after</u> impact with the Honda.

In a supplemental report submitted May 3, 2005, Yoshida incorporated Uchino's statements that the SUV had barrel rolled prior to impact with the Honda. Yoshida conducted further investigation and concluded that the gouge marks on Highway 11 supported the scenario of the SUV barrel rolling two to three times before hitting the Honda. Yoshida concluded that "Scott fails to maintain control of her SUV while negotiating the subject curve to the left and makes a series of steer corrections that produce a fishtail condition. Her speed, worn rear tires and a wet road condition contribute to her loss of control."

8

In spite of conflicting testimony, there was substantial evidence to support the circuit court's finding that the SUV barrel rolled before it hit the Honda, indicating that the SUV did not hydroplane due to alleged negligent road conditions caused by the State. Furthermore, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22.

Although Plaintiffs argue that the SUV did not barrel roll before impact and therefore must have hydroplaned, Plaintiffs failed to object to FOFs 18, 19, 20, and 24, all of which support the theory that the SUV did not hydroplane. "Findings of fact . . . that are not challenged on appeal are binding on the appellate court." Okada Trucking Co., Ltd., 97 Hawai'i at 458, 40 P.3d at 81.

**B. Sentences 3-5 of FOF 13 are not in error.**

Plaintiffs contend the last three sentences of FOF 13 are in error:

> 13. . . . [Uchino] first noticed the SUV's loss of control when it was uphill from the tour bus near some residences. At the point the SUV first lost control, Highway 11 is crowned, and well before the transition to where super elevation of the highway begins. The speed of the SUV when it began to fishtail was between 50-60 miles per hour.

Plaintiffs argue that the finding is erroneous because (1) Uchino was not sure where the SUV lost control, (2) control was not lost at Highway 11's crowned area, and (3) the SUV was traveling under 50 miles per hour.

There was substantial evidence to support the circuit court's findings in FOF 13. Uchino testified that he first saw

the SUV fishtailing[6] when it was uphill near the residences.  His use of the term "fishtailing" presumes a loss of control.  Plaintiffs acknowledge that the State's expert witness Richard Ryan (Ryan) testified that the accident took place where the road was crowned.  Plaintiffs' expert witness Richard Van Bruggen also testified that the area in question was a crown area that drained to the side.

Plaintiffs fail to argue that the SUV was traveling under 50 miles per hour, so that argument need not be considered.  See Bitney v. Honolulu Police Dep't, 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001).  Even considering the statement, Yoshida testified that the SUV was traveling between 50-60 miles per hour when it began to fishtail.  Uchino testified that while fishtailing, the SUV was "[p]robably under the speed limit or about the speed limit" of 55 miles per hour.

Because "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact," and there was substantial evidence to support the court's findings, the last three sentences of FOF 13 were not in error.  Tamashiro, 97 Hawai'i at 92, 34 P.3d at 22.

> C.  The circuit court erred in finding that "[i]f anything, [witnesses] saw water flowing from the highway off onto the shoulders" but the error is harmless.

FOF 17 reads:

> 17. After the accident and before police arrived, witnesses at the scene said that they did not see any standing water, or water ponding on the highway.  They did not see any water flowing from the shoulders onto the highway.  If anything, they saw water flowing from the highway off onto the shoulders.

(Emphasis added.)

_____

[6]  According to the on-line Merriam-Webster dictionary, "fishtail" means "to have the rear end slide from side to side out of control while moving forward."  http://www.merriam-webster.com/dictionary/fishtail (last accessed August 24, 2012).

Because Plaintiffs fail to find error in the first two sentences of FOF 17, we must take as fact that the witnesses did not see standing or ponding water, or water "flowing from the shoulders onto the highway." Okada Trucking Co., Ltd., 97 Hawai'i at 458, 40 P.3d at 81. Plaintiffs only assert that the circuit court erred in the last sentence, which reads: "If anything, [the witnesses] saw water flowing from the highway off onto the shoulders." (Emphasis added.)

In support of their assertion, Plaintiffs contend that witness Lucille Waldron (Waldron) testified that she saw "sheets of water on the road." In the record Plaintiffs cite to, Waldron made no comment about "sheets of water," but merely stated that she "noticed that water was on the road, flowing down to Hilo." When asked if she noticed whether or not there was water flowing from the road toward the shoulders, she replied that she did not notice.

Plaintiffs also cite to Uchino's testimony at trial, where he stated he saw a sheet of water, but did not remember "if it was moving down the highway or off the highway."

Neither of these witnesses testified that they saw water flowing onto the shoulder of the road. The circuit court erred in making the assumption that "[i]f anything, they saw water flowing from the highway off onto the shoulders." However, the error is harmless. State v. Propios, 76 Hawai'i 474, 486, 879 P.2d 1057, 1069 (1994) (erroneous finding of fact was harmless error). The witnesses' testimony provide substantial evidence to support the unchallenged sentences of FOF 17, which found that there was no standing water, no ponding water, and no water flowing onto the road.

D. The FOFs related to the 1994 resurfacing project, specifically, the last sentence of FOF 7, and FOFs 8, 10, and 24, are not erroneous.

Plaintiffs contend the following FOFs are in error:

. . . .

7. On May 24, 1994, the State designed plans for the regular maintenance resurfacing of Highway 11. The actual resurfacing took place during the summer of 1995. <u>The resurfacing was properly done according to the plans.</u>

8. It is undisputed that at the time of the original design and construction of the highway it complied with Federal and State of Hawai'i design guidelines. The resurfacing that occurred in 1995 was for regular maintenance during which a new layer of asphalt was placed on the highway surface. For such regular maintenance repaving, the highway need not be brought up to compliance with guidelines then in effect.

. . . .

10. The Plaintiffs have failed to prove by a preponderance of the evidence that the portion of Highway 11 between mile marker 11 and 13 where the accident occurred was negligently designed, constructed or maintained.

. . . .

24. The design, construction or maintenance of the highway was not proven by Plaintiffs by a preponderance of the evidence to be a legal cause of the accident.

(Emphasis added.)

Plaintiffs do not contest the first two sentences of FOF 7, but only contest the last sentence, which states that the resurfacing was properly done according to plans. Plaintiffs argue that the evidence shows the contractor did not follow the plans, did not meet the designed cross-slope, and there was a lack of "as-built" plans to document compliance with the plans.

Plaintiffs assert that Carson Elizares from the State Department of Transportation (DOT) testified that "the contractor did not comply with the plans." However, Plaintiffs direct us to a record devoid of such an assertion. On the other hand, Alvin Takeshita (Takeshita), DOT traffic engineer, testified in his deposition that the portion of Highway 11 between Mile Markers 12 and 13 "was properly designed according to the national engineering guidelines as well as the Hawaii State Design Manual." Plaintiffs fail to point to where in the record the "designed cross-slope" requirement is set out. Stanley Tamura testified that there were no significant differences between the

1994 design of the road when it was resurfaced and the 2001 pavement study. He also testified that the contours of the road in the accident area were not substantially changed by the 1994 resurfacing project from the 1948 contours or grade. Finally, Ryan testified that there were no violations of the design guidelines of Highway 11 between markers 12 and 13. Ryan testified that the 1995 repaving project followed the guidelines. Takeshita testified that because the resurfacing project was a special maintenance project, not a realignment project, it was not necessary for the project to be compliant with the Hawaii State Design Manual. DOT assistant district engineer Salvador Panem testified that in the resurfacing project, DOT merely overlaid the existing pavement with new asphalt concrete and did not attempt to realign the highway.

Because the credibility of the witnesses and weight given to their testimony lies in the province of the circuit court, we conclude there was sufficient evidence presented for the court to find that the resurfacing to Highway 11 was properly done and was not negligently designed, constructed, or maintained.

Finally, Plaintiffs contend that, via adverse inference, this court should conclude that superelevation plans existed for the 1994 repaving project and no "as-built" plans were created after the project. Because this contention is raised for the first time on appeal, we do not address it.

E. COLs B, C, D and E are not wrong.

Plaintiffs contend the following COLs are wrong:
. . . .

> B. Plaintiffs have failed to prove by a preponderance of the evidence and the [circuit court] concludes that the [State] was not negligent in the design, construction or maintenance of Highway 11 between mile marker 12 and 13.

> C. Plaintiffs have failed to prove by a preponderance of the evidence and the [circuit court] concludes that the design, construction and maintenance of Highway 11 between

13

Mile Markers 12 and 13 legally caused the Scott's [SUV] to fish-tail, cross the centerline and collide into the Kaikala [Honda].

D. The [circuit court] concludes by a preponderance of the evidence that Scott was negligent in the operation of her SUV by going down hill in a vehicle with worn tires on a wet road at a speed which caused her to lose control of the SUV.

E. The negligence of Scott is the sole legal cause of the accident and death of Shawn Kaikala.[7]

. . . .

"[B]ecause the court's conclusions are dependent upon the facts and circumstances" of the case, we review the COLs under the clearly erroneous standard. Chun, 106 Hawai'i at 430, 106 P.3d at 353. Having determined that the challenged circuit court's FOFs were supported by substantial evidence, and because the COLs follow from the FOFs, we conclude that the COLs are not wrong.

F.     Circuit court did not err in admitting a video animation of the accident into evidence.

After the State laid a foundation for the video animation illustrating Yoshida's opinion of the SUV's path down Highway 11 through its impact with the Honda to its final resting place, the circuit court admitted two CDs of the video animation into evidence. The State only showed the CD depicting the event in rain.[8]

_____

[7]   Reading the circuit court's FOFs and COLs in context, the circuit court clearly meant: (1) in COL B, that Plaintiffs had failed to prove by a preponderance of the evidence that the State was negligent in the design, construction or maintenance of the relevant portion of Highway 11; and (2) in COL C, that the circuit court concluded that the design, construction and maintenance of Highway 11 was not the legal cause of the Scott vehicle's collision with the Kaikala vehicle.

[8]   At trial, the State misidentifies the CDs by stating that D-190 animates the event with rain and D-191 animates it without rain. In actuality, the CDs are reversed. At trial, D-191 showing the event in rain is what was shown, even though the State identified the CD as D-190.

Plaintiffs contend the animation is not consistent with Uchino's testimony, is hearsay, and there was insufficient foundation laid as to the CDs' reliability.

The CD shows the SUV making four complete rolls on the road, striking and rolling over the Honda on its fifth roll. In Uchino's deposition and as written in two police reports, Uchino stated that the SUV hit the Honda and then barrel rolled over the top. But at trial, Uchino testified that the SUV rolled between one to three times <u>before</u> striking the Honda. In FOF 15, the circuit court recognized Uchino's uncertainty as to number of barrel rolls when it found that "[t]he SUV then barrel rolled between one and three times[.]"

The CDs are not hearsay because they were not introduced for the truth of the matter asserted but as a visual depiction of the State's theory of the case. Hawaii Rules of Evidence (HRE) Rule 801. The CDs were relevant, probative, and admissible for that purpose. <u>See</u> <u>Howell v. Union Pac. R. Co.</u>, 980 So. 2d 854, 859 (La. App. 2008) (computer animation used to illustrate expert's opinion was admissible).

Plaintiffs fail to provide any argument to support their statement that there was insufficient foundation laid as to the reliability of the CDs. Points not argued are waived. Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(7) ("Points not argued may be deemed waived.").

> G. **The circuit court did not err in admitting the State's testimony regarding the traffic accident history between Mile Markers No. 12 and 13.**

When Ryan testified regarding traffic count and traffic accident history, Plaintiffs did not object to Ryan's testimony, even when he stated that "the subject location has 9 to 10,000 ADT [average daily traffic]." Plaintiffs only objected to the State's question as to whether the traffic accident history would

15

have alerted the State to any wet weather problem in the accident area.

Also, when Takeshita was deposed, he stated without objection that the average daily traffic for the portion of Highway 11 in question was 10,600. Takeshita also testified without objection that a location would have to have two traffic accidents per year for three consecutive years before it would be considered a high accident location. He noted, again without objection, that Plaintiffs' expert witness, Ron Nickel, had reviewed the motor vehicle accident reports for the subject portion of Highway 11 and only found two accidents for a ten-year period. The circuit court did not err in admitting the State's testimony regarding the number of accidents.

### H.    Award of Costs

Plaintiffs contend the circuit court erred in granting the "[State's] Motion for Award of Fees and Costs" (Motion for Fees and Costs). Plaintiffs assert that the State's April 22, 2005 HRCP Rule 68 offers were frivolous and incomplete. Plaintiffs also contend that the expert witness costs improperly included costs incurred before the HRCP Rule 68 offers were rejected, arguing that because the State did not attach invoices to its Motion for Fees and Costs, it failed to meet its burden of proof that the costs were incurred after the HRCP Rule 68 offers were made. Plaintiffs contend that the circuit court failed to distinguish costs awarded under HRCP Rule 54(d) from those awarded under HRCP Rule 68.

HRCP Rule 54 creates a strong presumption that the prevailing party will recover costs. Wong, 88 Hawai'i at 53-54, 961 P.2d at 618-19. The rule provides that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]" HRCP Rule 54(d)(1). When a particular taxable cost is allowed, the

16

actual disbursement is presumptively reasonable, and it is the burden of the adverse party to challenge its reasonableness. In the absence of a challenge, the trial court does not abuse its discretion in awarding the cost. Wong, 88 Hawai'i at 53-54, 961 P.2d at 618-19.

HRS § 607-9 describes the types of costs that are allowed the prevailing party:

> All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

HRCP Rule 68, related to offers of settlement and judgment, is a cost-shifting provision that affects how costs are awarded when an offer of settlement or judgment is not accepted. As a means to encourage settlement, HRCP Rule 68 also provides for a wider range of costs than would be permissible under HRCP Rule 54. Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 308-09, 972 P.2d 295, 310-11 (1999) (policy behind rule is to encourage settlement). The decision to tax costs will not be disturbed absent a clear abuse of discretion. Wong, 88 Hawai'i at 52, 961 P.2d at 617.

On April 22, 2006, the State made HRCP Rule 68 offers to all Plaintiffs except John Krause, which were not accepted. After prevailing at trial, on April 9, 2007, the State filed its Motion for Fees and Costs pursuant to HRCP Rule 54(d) and HRCP Rule 68 for $189,749.46. The State noted that the fees and costs incurred after the settlement offers amounted to $118,171.50

On May 24, 2007, the circuit court issued its "Court Order Granting in Part and Denying in Part [State's] Motion for Award of Fees and Costs Filed April 9, 2007" (Order Granting Fees and Costs), awarding costs to the State in the amount of

$119,470.46. The circuit court found the State was entitled to costs under HRCP Rule 54(d), Hawaii Revised Statutes (HRS) § 607-9, and HRCP Rule 68. The circuit court allowed expert witness fees under HRCP Rule 68; deposition copy costs under HRCP Rule 68 and HRS § 607-9; and photocopying costs under HRCP Rule 68, although we note that photocopy expenses are also allowed under HRS § 607-9. See Kikuchi v. Brown, 110 Hawai'i 204, 211, 130 P.3d 1069, 1076 (App. 2006). The circuit court denied costs for expert witness Robert Post, some trial transcripts, FedEx delivery services, miscellaneous costs, and City Express messenger services.

The State agreed with Plaintiffs that circuit court's Order Granting Fees & Costs needs to be modified as it relates to a non-offeree. Because no settlement offer was made to Krause, he was not an offeree and post-offer costs for expert fees under HRCP Rule 68 cannot be awarded against him. The State recommends that the circuit court's Order Granting Fees & Costs "be modified to reflect that all Plaintiffs are jointly and severally liable for the costs awarded under [HRCP] Rule 54, or $29,220.09, and all Plaintiffs except [Krause] are additionally jointly and severally liable for the expert fees of $90,250.37." See Pulawa v. GTE Hawaii Tel, 112 Hawai'i 3, 23 n. 18, 143 P.3d 1205, 1225 n.18 (2006) (it is within court's discretion to tax costs against non-prevailing parties jointly and severally).

Plaintiffs contend the circuit court erred in failing to identify which costs were awarded under HRCP Rule 54(d) and which were awarded under HRCP Rule 68, arguing that only those costs actually incurred after the date of the qualifying offer of settlement are eligible under HRCP Rule 68. Canalez, 89 Hawai'i at 308, 972 P.2d at 311. Furthermore, Plaintiffs contend that the State must provide invoices to support its requests for costs incurred after the date of the HRCP Rule 68 settlement offers.

18

Contrary to Plaintiffs' contentions, it is their burden to raise a challenge below as to the dates the costs were incurred, which they failed to do. Wong, 88 Hawai'i at 5, 961 p.2d at 619. Only after Plaintiffs object to specific items does "[t]he burden of proving correctness of items" shift to the State. Wong, 88 Hawai'i at 53, 961 p.2d at 618 (internal quotation marks and citations omitted). Absent a challenge below, Plaintiffs have not preserved the challenge on appeal.

The State argued at the hearing on its Motion for Fees and Costs that it was only requesting "the expert fees which were incurred as costs after making the offers of settlement on April 22, 2006, which is discretionary [under HRCP Rule 68]." The State submitted a sworn affidavit attached to a "copy of the itemization of all fees and costs . . . incurred by the State in defending this action after service of the offers of settlement."

Plaintiffs contend that the Order Granting Fees and Costs was defective because any award under HRCP Rule 68 is only awardable against adult offerees. Plaintiffs argue that a HRCP Rule 68 offer is not valid when offered to a minor because the offer "would not fully and completely decide the minor's claim because he or she would be free to disaffirm any contract prior to reach the age of majority." This argument is without merit.

Five of the plaintiffs were minors when the State served separate HRCP Rule 68 Offers of Settlement on each Plaintiff except Krause, Kaikala's boyfriend. The offers were served through Plaintiffs' attorney. At the time of service, Krause was the guardian of the person and property of three minor plaintiffs and Lynda was guardian for two minor plaintiffs. Any settlement offer and acceptance as to minor children was subject to circuit court approval. Leslie, 91 Hawai'i at 403, 984 P.2d at 1229. Plaintiffs cite to no authority to support their argument that an offer accepted on behalf of a minor by the minor's guardian and approved by the court is not a valid, final

19

contract fully and completely deciding the claims, and we find none.  See Kikuchi, 110 Hawai'i at 209, 130 P.3d at 1074.

Plaintiffs also contend that the State must itemize its costs specific to each plaintiff to be a qualifying cost request. For example, the record depositions for school records must be assessed only against the plaintiff whose records they are. Plaintiffs raise this argument for the first time on appeal and we need not address it.  "Appellate courts will not consider an issue not raised below unless justice so requires."  Bitney, 96 Hawai'i at 251, 30 P.3d at 265.

## IV.  CONCLUSION

The Judgment entered April 20, 2007 in the Circuit Court of the Third Circuit is affirmed except for the award of costs against John Krause.  The case is remanded for modification of the "Court Order Granting in Part and Denying in Part Defendant State of Hawaii's Motion for Award of Fees and Costs Filed April 9, 2007" to reflect that although all Plaintiffs are jointly and severally liable for costs of $29,220.09 awarded under HRCP Rule 54, John Krause is not jointly or severally liable for the expert fees of $90,250.37, awarded pursuant to HRCP Rule 68.

DATED:  Honolulu, Hawai'i, August 31, 2012.

On the briefs:

Joy A. San Buenaventura
and Peter Van Name Esser[9]
for Plaintiffs-Appellants.

Donna H. Kalama
Deputy Attorney General
for Defendant/Cross-
Claim Plaintiff/Cross-Claim
Defendant/Appellee.

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

---

[9]  Peter Van Name Esser made his appearance in the Application for Writ of Certiorari filed in the Hawai'i Supreme Court under appellate court case number SCWC-28669.

20